FRUGÉ, Judge.
Oliver A. Windham instituted this action to recover benefits allegedly due him under an employee’s group accident policy issued by Universal American Life Insurance Company, which subsequently merged with Investors Preferred Life Insurance Company. The trial court rejected the plaintiff’s demands at his cost, from which judgment the plaintiff appeals.
In the summer of 1966 the plaintiff, then forty-nine years of age, was employed by Trichel Contracting Company of Jena, Louisiana, as a laborer helping equip oil well locations with storage tanks, treaters, and other paraphernalia required to service producing wells. On July 12, 1966, the plaintiff was overcome by heat exhaustion and had to leave the job. He returned to work on July 18, 1966, and on July 20, 1966, he again succumbed to heat exhaustion which forced him to leave his job, to which he never returned. On the night of August 10, 1966, the plaintiff suffered what was eventually diagnosed as a myocardial infarction, a type of heart failure.
The insurance contract in question covered the plaintiff “for any loss resulting directly, independently and exclusively of all other causes from bodily injuries effected solely through external and accidental means whether such injuries occur in the course of any occupation or employment, or otherwise.” Pertinent coverage limitations of the policy are as follows:
PART B
TOTAL DISABILITY
“If injuries as described in this Policy are sustained by the Insured Employee and within twenty (20) days from the date of accident independently of all other *892 causes, wholly and continuously disable the Insured Employee from engaging in any occupation or employment for wage or profit, the Company will pay for the period of such loss of time, but not exceeding twelve consecutive months, monthly indemnity at the rate of One Hundred ($100.00) Dollars.”
PART D
EXCEPTIONS AND REDUCTIONS
“The Insurance under this certificate shall not cover * * *; (7) any loss caused or contributed to directly or indirectly by disease or bodily or mental infirmity * * *; nor (11) aggravation of pre-existing injuries not covered under this policy.”
The plaintiff’s primary contention is that heat exhaustion is an “accident”, and the two incidents of heat exhaustion caused the heart attack on August 10, 1966, which permanently and totally disabled the plaintiff. The trial court disposed of this contention by holding that Part' B of the policy quoted above providing that the injury must occur within twenty days of the accident precludes recovery by the plaintiff on this basis, since the heart attack occurred more than twenty days after the last episode of heat exhaustion.
Since there are thirty-one days in the month of July, August 10 is twenty-one days after July 20. The evidence shows that the heart attack occurred between 11:00 and 12:00 o’clock on the night of August 10, 1966. Therefore, even if there were a causal connection between the heat exhaustion of July 20 and the heart attack of August 10, there would be no coverage under the policy because of the twenty-day limitation.
The plaintiff relies on the case of Thi-bodeaux v. Pacific Mutual Life Insurance Co., 237 La. 722, 112 So.2d 423 (1959), in which the insurance contract contained a clause with a twenty-day limitation similar to the one in the instant case. In that case the plaintiff, a rice farmer, was struck by a falling barrel and was totally disabled from the time of the accident. There was no twenty-one-day period between the accident and the injury, as there was in the instant case. The Thibodeaux case in no way conflicts with the trial court's judgment in regard to the twenty-day limitation.
The plaintiff also contends that he was permanently and totally disabled by the two episodes of heat exhaustion. The record, however, is replete with medical testimony to the effect that the effects of heat exhaustion are temporary, as reflected by Dr. David L. Trax’s testimony at page 61 of the record:
“Q. Now if there was a change in the blood flow, you might call it, due to heat exhaustion, would that change last for 21 days?
“A. No. No. Not in the heat exhaustion. No. No. It will usually clear up within eight to twenty-four hours. And I’ve never had any complications with it.
“Q. If a healthy man with no arteriosclerosis, or no advanced arteriosclerosis, experienced an episode of heat exhaustion, would you expect his blood pressure to remain elevated for 21 days?
“A. No, I would not. I’d expect it to be back to normal within eight or ten hours.”
The trial court was amply justified in finding that the plaintiff was not permanently and totally disabled by the two episodes of heat exhaustion, in view of the medical testimony adduced at the trial.
For the reasons assigned, the judgment of the trial court is affirmed at the plaintiff-appellant’s cost.
Affirmed.